UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CELSO MARTINS, ALEXANDRE      )
ROCHA, and CALVIN ANDERSON    )
on behalf of themselves and   )
all others similarly          )
situated,                     )
                              )
            Plaintiffs,       )
                              )
                              )   CIVIL ACTION NO.
                              )   11-11313-DPW
        v.                    )
                              )
3PD Inc.                      )
                              )
            Defendant.        )


<u>MEMORANDUM AND ORDER</u>
March 27, 2014

This memorandum marks the resumption of motion practice in a
dispute between Plaintiffs Celso Martins, Alexandre Rocha and
Calvin Anderson and their employer, Defendant 3PD, Inc., over
3PD's alleged violation of the Massachusetts Wage Act, Mass. Gen.
Laws. ch. 149 §§ 148, 150.  Plaintiffs bring claims against 3PD
for misclassification (Count I), improper deductions (Count II)
and unjust enrichment (Count III).  In a March 28, 2013
Memorandum and Order, I granted Plaintiffs' motions both for
class certification and for summary judgment as to Count I,

thereby declaring them and other similarly situated[1] employees for purposes of the Wage Act, but denied their motion for class certification as to Counts II and III. *Martins* v. *3PD, Inc.*, 2013 WL 1320454 at *21 (D. Mass. Mar. 28, 2013). In the March 28, 2013 Memorandum and Order, I also granted Plaintiffs' motion to amend the complaint to add Calvin Anderson as a named Plaintiff, and denied 3PD's motions for summary judgment as to Mr. Rocha and Mr. Martins, in which 3PD argued, *inter alia*, that Plaintiffs' claims were preempted by federal law. *Id.*

Following further discovery, Plaintiffs have filed a renewed motion for class certification as to Counts II and III (Dkt. # 93). At a hearing on that motion, I indicated to the parties that it would assist me in determining the appropriateness of class certification as to Counts II and III if Plaintiffs were to file a motion for summary judgment as to damages so that I could better understand the nature of the damages they were seeking for putative class members. Plaintiffs have since filed a motion for summary judgment as to damages to accompany their renewed motion for class certification. For its part, 3PD has filed a second motion for summary judgment, and has moved to decertify the class

---

[1] As will appear below, a proper definition of "other[s] similarly situated" requires a refinement in the class description for Count I, which I will order through this memorandum.

as to Count I.  In response to 3PD's second motion for summary judgment, Plaintiffs have filed a motion to strike and a motion for sanctions.  I address these pending motions in this Memorandum and Order.

## I.  BACKGROUND

The facts are set forth in some detail in the March 28, 2013 Memorandum and Order.  *See Martins*, 2013 WL 1320454 at *1-3.  For present purposes, it is helpful to know that 3PD contracts to provide home delivery services for large retailers such as The Home Depot and Lowe's.  Plaintiffs are federally licensed motor carriers who work for 3PD to provide transportation, delivery, and installation services for 3PD's customers' products.  Consistent with 3PD's classification of its drivers as independent contractors, it made certain deductions from its payments to the drivers for costs that the drivers' Delivery Service Agreements ("DSAs") specified were to be borne by the drivers.[2]  These included deductions for truck lease payments, liability insurance, worker's compensation insurance, administrative fees, uniforms, and chargebacks for physical damage caused during the delivery process.

---

[2] As previously noted, the DSAs between 3PD and the class members were non-negotiable and are materially identical. *Martins* v. *3PD, Inc.*, 2013 WL 1320454 at *2 (D. Mass. Mar. 28, 2013).

I previously ruled that 3PD misclassified Plaintiffs as independent contractors when I concluded, as a matter of law, that they qualify as employees of 3PD under the Massachusetts independent contractor statute, Mass. Gen. Laws ch. 149 § 148B. *Martins*, 2013 WL 1320454 at *13 (finding Plaintiffs are employees under § 148B because they "performed services within the usual course of 3PD's business").

The principal remaining issue in the case concerns the measure of damages due Plaintiffs as a result of this misclassification, and relatedly, whether the issue of damages can be resolved on a class-wide basis. Plaintiffs seek as damages the reimbursement of any and all amounts which they contend were improperly deducted from their earnings in violation of the Wage Act, plus mandatory trebling and attorneys fees pursuant to Mass. Gen. Laws ch. 149, § 150.

## II. MOTIONS FOR SUMMARY JUDGMENT

A movant is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers*

*Ins. Exch.* v. *RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).

I "view the facts in the light most favorable to the party opposing summary judgment." *Rivera-Colón* v. *Mills*, 635 F.3d 9, 10 (1st Cir. 2011). However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment. *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (citation omitted). In dealing with cross-motions for summary judgment, I "must view each motion, separately, through this prism." *Estate of Hevia* v. *Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).

## A. *3PD's Motion for Summary Judgment*

Before turning to Plaintiffs' motion for summary judgment on damages, which is at the heart of this case, I will address issues raised by 3PD's second motion for summary judgment.

At a hearing on May 6, 2013, 3PD requested an opportunity to file a motion for summary judgment to be considered concurrently with Plaintiffs' renewed motion for certification and motion for summary judgment on damages. As is reflected in the transcript of that hearing, it was my understanding and intention that 3PD's motion would be limited to issues surrounding the newly added

Plaintiff Calvin Anderson and his ability to serve as a class representative.

3PD's motion for summary judgment does not even pretend to address issues related to the inclusion of Plaintiff Anderson in the certified class. Instead — apparently unwilling to accept my March 28, 2013 Memorandum and Order explaining denial of its earlier motion for summary judgment, where I expressly rejected its federal preemption argument, *see Martins*, 2013 WL 1320454 at *11 ("I find that the [Federal Aviation Administration Authorization Act] does not preempt Plaintiffs' claims") — 3PD has used its renewed motion as an occasion to reargue the preemption issue and seek the dismissal of all the Plaintiffs' claims. In response, Plaintiffs have moved both to strike 3PD's motion as outside the scope of the operative scheduling order and for sanctions against 3PD under Fed. R. Civ. P. 56(h) for filing a duplicative and frivolous motion for summary judgment.

Even if I were to treat 3PD's motion as a motion for reconsideration (although it is not styled as one), 3PD has not alleged any compelling basis for reconsideration. Reconsideration is warranted only in a limited number of circumstances, namely where: 1) the moving party presents newly discovered evidence material to the Court's decision, 2) there has been an intervening change in law or 3) the decision was

based on a manifest error of law or fact or was clearly unjust.
*United States* v. *Allen*, 573 F.3d 42, 53 (1st Cir. 2009). "Such
motions are not vehicles for pressing arguments which could have
been asserted earlier or for 're-arguing theories previously
advanced and rejected.'" *Galanis* v. *Szulik*, 863 F. Supp. 2d 123,
124 (D. Mass. 2012) (quoting *Palmer* v. *Champion Mortg.*, 465 F.3d
24, 30 (1st Cir. 2006)). The granting of a motion for
reconsideration is "an extraordinary remedy which should be used
sparingly." *Palmer* 465 F.3d at 30.

3PD contends that its instant motion for summary judgment
relies on a different theory of FAAAA preemption than did its
first such motion. There is no merit to this contention. Even
if the focus of 3PD's earlier preemption argument was that the
FAAAA preempts Mass. Gen. Laws ch. 149, § 148B as applied to this
case because § 148B improperly "enlarges the bargain" struck
between the class members and 3PD, *see Martins*, 2013 WL 1320454
at *11, 3PD also argued and I expressly considered whether the
FAAAA preempts § 148B because it has an impermissible effect on a
carrier's "price, route, or service." *Id.* at *12-13. This second
argument is precisely the argument 3PD advances again in its new
motion for summary judgment. Further, to the extent 3PD
neglected to articulate some independent basis for FAAAA

preemption in its earlier motion for summary judgment, it has failed to demonstrate why it should be allowed to do so now.

I observe that there has been no intervening change in the governing law and my previously expressed view on the matter remains the majority view. This is true notwithstanding the contrary decision issued the week following my March 28, 2013 Memorandum and Order, handed down by Judge Lee of the Eastern District of Virginia in *Sanchez* v. *Lasership, Inc.*, 937 F. Supp. 2d 730 (E.D. Va. 2013) (finding FAAAA preempts § 148B as applied to "transportation services" company).[3] Quite apart from the fact that I am not bound by Judge Lee's ruling regarding Massachusetts law, I note that the arguments that Judge Lee found persuasive in *Lasership* are all ones that I considered and rejected in my March 28, 2013 Memorandum and Order.

Moreover, the scope of FAAAA preemption was further clarified and effectively narrowed by the Supreme Court's decision in *Dan's City Used Cars, Inc*. v. *Pelkey*, 133 S. Ct. 1769 (2013), issued about a month after *Lasership*, in which the Court stated that "for purposes of FAAAA preemption, it is not

---

[3] The plaintiffs in *Lasership* appealed to the Fourth Circuit, but the parties reached a proposed settlement agreement before that court had issued an opinion in the case. *See Sanchez* v. *Lasership, Inc.*, No. 13-1478, Doc. #73 (4th Cir. Dec. 4, 2013) (remanding case to district court for review and approval of proposed class action settlement).

sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; *the law must also concern a motor carrier's 'transportation of property.'"* *Id.* at 1778-79 (emphasis added). Following the Supreme Court's decision in *Dan's City*, several other judges in this Circuit have concluded that the FAAAA does not preempt § 148B or similar statutory provisions under New Hampshire law. *See Mass. Delivery Assoc.* v. *Coakley*, 2013 WL 5441726 at *5-9 (D. Mass. Sept. 26, 2013); *Gennell* v. *FedEx Ground Package Sys.*, 2013 WL 4854362 at *3-7 (D.N.H. Sept. 10, 2013); *Schwann* v. *FedEx Ground Package Sys., Inc.*, 2013 WL 3353776 at *2-6 (D. Mass. July 3, 2013).

In short, I will deny what is formally styled as a motion for summary judgment but is in actuality a motion for reconsideration filed by 3PD. Since Judge Lee's opinion in *Lasership* came after my March 28, 2013 Memorandum and Order, however, I decline to strike the renewed motion for summary judgment or impose sanctions for its submission.

## B. *Plaintiffs' Motion for Summary Judgment on Damages*

Because I believe it will be helpful in framing the class certification issues with respect to Counts II and III, I will take up Plaintiffs' motion for summary judgment on damages before considering their motion for class certification. Although summary judgment is typically entered on legal claims or

defenses, courts also "routinely award damages that are readily calculable based on the undisputed facts on summary judgment." *AEP Energy Servs. Gas Holding Co.* v. *Bank of America, N.A.*, 626 F.3d 699, 740 (2d Cir. 2010).  Moreover, the issue of damages here is virtually indistinguishable from the issue of liability on Counts II and III, because these counts effectively pertain exclusively to the measure of damages due Plaintiffs.

Plaintiffs' motion for summary judgment as to damages argues that "there is no dispute as to the type and amount of deductions 3PD made from class members' wages."  In my view, this motion raises two principal issues:  first, what categories of deductions are recoverable as a matter of law under the Wage Act; and second, whether Plaintiffs have demonstrated that there is no genuine issue of material fact as to the amount of damages to which each named Plaintiff is entitled.

1.  Categories of Deductions Recoverable as Damages

Plaintiffs take the position that once an employee proves that he has been misclassified as an independent contractor under § 148B, any and all deductions from his pay, even if assented to, are thereby impermissible under the Wage Act as "special contracts" exempting the employer from the prompt and full payment of wages, Mass. Gen. Laws. ch. 149, § 148, and are recoverable as damages.  3PD takes the position that *all*

deductions made were permissible under an exception set forth in § 150 for "valid set-off[s]."

Section 148 of the Wage Act "requires prompt and full payment of wages due" and prohibits "special contracts" which purport to exempt an employer from any of the requirements of the Wage Act. *See Camara* v. *Att'y Gen.*, 941 N.E.2d 1118, 1121 (Mass. 2011). The Supreme Judicial Court has interpreted the "special contract" language in § 148 as "generally prohibiting an employer from deducting, or withholding payment of *any* earned wages," even where the employee has assented to the deduction. *Id.* (emphasis in original). The only exception to this general rule is for a "valid set-off" as referenced in § 150.[4] Although § 150 does not define what is meant by "valid set-off," the SJC has stated that "we understand the term in the common, ordinary sense to refer to circumstances where there exists a clear and established debt owed to the employer by the employee." *Somers* v. *Converged Access, Inc.*, 911 N.E.2d 739, 750 (Mass. 2009).

An agreement between an employer and employee authorizing the deduction automatically might be viewed linguistically as a "valid set-off;" but such a definition would eviscerate the

---

[4] Mass. Gen. Laws ch. 149, § 150 provides: "no defence for failure to pay as required, other than the attachment of such wages by trustee process or a valid assignment thereof or a valid set-off against the same . . . shall be valid."

statutory prohibition on special contracts. *See Awuah* v.

*Coverall North Am.*, 952 N.E.2d 890, 892 (Mass. 2011) (holding

assented-to deduction for costs of workers' compensation

insurance to be invalid and recoverable as damages); *Camara*, 941

N.E.2d at 1124 (holding assented-to deduction for costs

attributed to at-fault accidents to be invalid and recoverable as

damages).  As to what might actually constitute a valid statutory

set-off, the SJC has implicitly endorsed the view of the

Massachusetts Attorney General that such set-offs would include,

but would not necessarily be limited to, situations

> where there is proof of an undisputed loan or wage advance
> from the employer to the employee; a theft of the employer's
> property by the employee, as established in an "independent
> and unbiased proceeding" with due process protections for
> the employee; or where the employer has obtained a judgment
> against the employee for the value of the employer's
> property.

*Camara*, 941 N.E.2d at 1124 n.13.

The SJC has "consistently held that the legislative purpose

behind the Wage Act (and especially the 'special contract'

language) is to provide strong statutory protection for employees

and their right to wages." *Crocker* v. *Townsend Oil*, 979 N.E.2d

1077, 1086 (Mass. 2012); *see generally Camara* 941 N.E.2d at 1121;

*Electronic Data Sys. Corp.* v. *Att'y Gen.*, 907 N.E.2d 635, 641

(Mass. 2009); *Wiedmann* v. *Bradford Group, Inc.*, 831 N.E.2d 304,

308-09 (Mass. 2005); *Boston Police Patrolmen's Ass'n* v. *Boston*,

761 N.E.2d 479, 480-81 (Mass. 2002). Consistent with the Wage

Act's "broad remedial purpose," *Depianti* v. *Jan-Pro Franchising*

*Int'l*, 990 N.E.2d 1054, 1067 (Mass. 2011), the SJC has made clear

that any attempt by an employer to shift the ordinary costs of

doing business to its employees must be met with skepticism and

carefully scrutinized. *See, e.g.*, *Awuah* 952 N.E.2d at 898-900;

*Camara*, 941 N.E.2d at 1121-24 & n.11. Yet, despite the increase

in Wage Act litigation that has occurred in recent years, case

law addressing in detail the nature of damages recoverable as a

result of misclassification remains limited. In fact, in *Awuah*,

the SJC explicitly acknowledged the issues surrounding the

"effort to recast" what is on paper an independent contractor

agreement into an employment agreement. *See* 952 N.E.2d at 897

n.20. The SJC remarked that such a recasting requires a

"strained interpretation" of the agreement, and apparently

regarded the task of identifying the universe of recoverable

damages as so daunting that it "decline[d] the request of the

plaintiffs to address all the types of costs or fees that are in

dispute" apart from those costs specifically identified in the

certified question it set out to answer in *Awuah*. *Id*.

Notwithstanding this lack of specific guidance, I must now

address each category of deductions the Plaintiffs seek to

recover as damages.

* * *

I recognize that, in light of this lack of specific guidance, Judge Stearns recently decided to certify questions to the SJC regarding the types of deductions that are properly recoverable as damages under the Wage Act. *Schwann* v. *FedEx Ground Package Sys., Inc.*, 2014 WL 496882 (D. Mass. Feb. 7, 2014). In Judge Stearns' view, "the question of whether business expenses and deductions borne by employees are recoverable under the Wage Act is unsettled under state law." *Id.* at *3. While I share Judge Stearns' recognition of the lack of specific guidance from the SJC on the subject of improper deductions, I am less apprehensive that there exists uncertainty in the case law requiring a federal district court to await further direction from the Supreme Judicial Court.

Judge Stearns expressed his belief that a recent decision of the Massachusetts Appeals Court stating, "[i]n the ordinary course, the violation of a standard expense reimbursement arrangement would not constitute a violation of the Wage Act because the reimbursement is not compensation 'earned' by 'labor, service or performance,'" *Fraelick* v. *PerkettPR, Inc.*, 989 N.E.2d 517, 523-24 (Mass. App. 2013), stands in tension with the SJC's decision in *Awuah*, which, in Judge Stearns' view, "plainly states than an employer cannot effectively reduce an employee's wages by

-14-

shifting business costs to the employee." *Schwann*, 2014 WL
496882 at *3 (citing *Awuah*, 952 N.E.2d at 900 n.22).  In Judge
Stearns' view, "the Appeals Court in *Fraelick* appears to take the
position that an agreement for an employee to bear business costs
is not actionable under the Wage Act, as such an agreement does
not diminish 'earned' wages." *Id.* (citing *Fraelick*, 898 N.E.2d
at 523-24).  I am not convinced that *Fraelick* stands for such a
proposition, or that if it did it would be inconsistent with the
broad teaching in *Awuah.*

The plaintiff in *Fraelick* sued her former employer,
alleging, *inter alia*, breach of contract for failing to reimburse
her for business expenses that she incurred on the condition that
she would be reimbursed, and retaliatory discharge under § 148A
of the Wage Act.  *Fraelick*, 989 N.E.2d at 518-19.  A judge in the
Superior Court granted the defendants' motion to dismiss, and the
plaintiff appealed.  *Id.* at 519.  In relevant part, the question
before the Appeals Court was whether the plaintiff had stated a
claim for retaliatory discharge under the Wage Act, when she had
allegedly been fired for refusing to continue to front expenses
without receiving timely reimbursement.  *Id.* at 520-21.  It was
in this context that the Appeals Court stated that "[i]n the
ordinary course, the violation of a standard expense
reimbursement arrangement would not constitute a violation of the

-15-

Wage Act because the reimbursement is not compensation 'earned' by 'labor, service or performance.'"  *Id.* at 523-24. Nevertheless, the Appeals Court held that under existing Wage Act precedent, specifically *Camara* and *Awuah,* it was reasonable for the plaintiff to believe that her employer was violating the Wage Act by "requir[ing] the employee, under penalty of discharge, to advance, indefinitely, expenses for the employer's benefit."  *Id.* at 524.  Therefore, the Appeals Court held, the plaintiff's *retaliation* claim was sufficient to survive a motion to dismiss because "[a] complaint made to an employer . . . by an employee who *reasonably believes* that" her employer has violated the Wage Act "readily qualifies" as a protected action under the anti-retaliation provision of the Wage Act.  *Id.* at 522, 525 (emphasis added) (quoting *Smith* v. *Winter Place LLC*, 851 N.E.2d 417, 421 (Mass. 2006); *see* Mass. Gen. Laws. ch. 149, § 148A ("No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the [Wage Act].").

Apart from the fact that the Appeals Court in *Fraelick* did not actually determine whether an underlying Wage Act violation had occurred (apart from the retaliation claim, none was alleged), *see id.* at 518, the facts of *Fraelick* are readily distinguishable from the facts of misclassification cases like

*Awuah* and the instant case.  The employee in *Fraelick* was paid an annual salary, and was required by her employer to front certain business expenses on the condition that she would be reimbursed. *Id.* at 519-20.  Except insofar as her employer's failure to timely reimburse her caused her financial hardship, the plaintiff in *Fraelick* did not allege that her employer had improperly reduced or made deductions from her earned wages in violation of the Wage Act.  Here, as in *Awuah* and other similar cases, Plaintiffs' arrangement with 3PD was in many ways the obverse of the arrangement at issue in *Fraelick*.  Plaintiffs and 3PD entered into a "special contract," under which the Plaintiffs agreed not merely to front many of 3PD's ordinary costs of doing business, but to bear them entirely.  Because Plaintiffs did not actually pay these costs out of pocket, 3PD would purport to "advance" the costs to Plaintiffs, and then deduct them from the Plaintiffs' earned wages in violation of the Wage Act.  For the reasons stated, I thus do not find *Fraelick* to be in tension with *Awuah* or other precedents of the SJC.

I am satisfied I may continue with the shaping of this case without awaiting further, more precise, direction from the SJC. I therefore turn to the issue of the specific damages recoverable.

a.  *In-Home Damage Chargeback and Broken Freight Charges*

3PD deducted from its payments to Plaintiffs charges for "in-home damage claims" and "broken freight."  These deductions are materially indistinguishable from the deductions at issue in *Camara* for at-fault accidents, which the SJC held to violate the Wage Act.  *See Camara*, 941 N.E.2d at 1119-20, 1124.  Accordingly, the total amount of deductions in this category charged to each individual Plaintiff in connection with deliveries he himself performed is recoverable as damages in this action.

b.  *Insurance Costs*

3PD also deducted from its payments to Plaintiffs the costs of various insurance policies, including workers' compensation, employer's liability, automotive liability, comprehensive general liability, excess/umbrella, and cargo insurance.  Under the SJC's decision in *Awuah*, an employer may not transfer the cost of worker's compensation insurance or other insurance coverage "intended to protect against the risk of damage to an employer's property, or the risk of injury to the person or property of a third party for which an employer may become financially responsible."  952 N.E.2d at 899 (concluding deductions for workers' compensation, janitorial bonding, and comprehensive liability insurance were all recoverable as damages).  Although 3PD contends that this case is distinguishable from *Awuah* because

it alleges that Plaintiffs would not be considered employees under the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152, that statute uses a different test for employment than the one found in § 148B of the Wage Act.

Even if 3PD were correct that Plaintiffs would not be considered employees under the Workers' Compensation Act, once 3PD elected to obtain such coverage, it was not free to transfer that cost to the drivers. *See Awuah,* 952 N.E.2d at 898-900. As to the other types of insurance, I see no material difference between the types of insurance costs held to be recoverable as damages in *Awuah* and the ones at issue in this action. Accordingly, all insurance deductions are recoverable by Plaintiffs as damages. The same is true of deductions made to fund "reserve accounts" (which functioned as a sort of bond to cover potential future losses) that were ultimately not returned to Plaintiffs.

   *c.  Administrative Fees*

3PD made deductions for various administrative, settlement, qualification and uniform fees. Although it is not clear from the record the purpose of all these miscellaneous fees, 3PD does nothing to rebut the Plaintiffs' assertion that the charging of these fees to Plaintiffs was simply another example of the many ways in which 3PD shifted the ordinary cost of doing business to

-19-

its employees.  I am therefore confident in concluding as a
general proposition that they were not properly deductible from
Plaintiffs' pay and are therefore recoverable as damages.

   d.  *Truck Repair and Maintenance*

   3PD made deductions for damage to 3PD trucks designated as
"driver abuse," as well as for costs of routine maintenance.
These deductions represent an ordinary cost of doing business and
are plainly impermissible under *Camara*.  *See Camara*, 941 N.E.2d
at 1124 (holding assented-to deduction for costs attributed to
at-fault accidents to be invalid and recoverable as damages).

   e.  *Truck Lease Payments*

   3PD leased trucks to Plaintiffs and then deducted lease
payments from their earnings.  3PD argues such an arrangement is
permissible under *Awuah* v. *Coverall North Am., Inc.*, 740 F. Supp.
2d 240, 243 (D. Mass. 2010), in which Judge Young concluded that
"franchise fees, royalty and management fees, and [fees for]
supplies and equipment" could be charged to janitorial service
workers who were misclassified as independent contractors under §
148B.  3PD observes that when Judge Young later certified a
question to the SJC on the permissibility of some such fees (but
not others), *see Awuah*, 952 N.E.2d at 892, the SJC "did not
disturb" Judge Young's earlier ruling in *Awuah*, and accordingly,
contends "vehicle lease payments, like deductions for equipment

-20-

and supply purchases, are therefore not illegal under the Wage

Act." Although the SJC did not expressly address the issue of

deductions for supplies and equipment, contrary to 3PD's

contention, the court did in fact disturb Judge Young's ruling in

*Awuah* when it held that franchise fees are *not* permissible

deductions under the Wage Act. *See Awuah*, 952 N.E.2d at 900-901.

Much like the franchise fees paid by the janitorial

employees in *Awuah*, which the SJC concluded "operate[d] to

require employees to buy their jobs from employers," requiring

employees of a delivery company to lease from that company a

delivery truck — the very tool needed to do their job — is

violative of public policy generally and specifically the Wage

Act's prohibition on "special contracts not usual between

employers and employees." *See id.* at 900. Accordingly,

deductions for lease payments are recoverable as damages.

## 2. Factual Issues Surrounding Individual Damages

In its opposition to Plaintiffs' motion for summary judgment

on damages, 3PD argues that factual issues preclude summary

judgment because, even if all deductions are recoverable as

damages, Plaintiffs have both "failed to differentiate between

monies they received for work they performed from monies they

received for work others [i.e. their secondary drivers]

performed," and failed to identify, "for those instances in which

they actually performed the work, the portion of money they received that was attributable to their labor." I will address these contentions in reverse order.

3PD's second argument is entirely without merit. A misclassified employee is not required to demonstrate what percentage of his earnings is attributable to his labor; "his contract rate is his wage rate." *Somers*, 911 N.E.2d at 744. 3PD misplaces reliance on the SJC's decision in *Awuah*, which merely stands for the proposition that the price billed to the *customer* for services — in that case janitorial services — represents the employer's gross revenue, and does not automatically become the employees' wage rate upon a finding of misclassification. *See* 952 N.E.2d at 890 n.20.

Here, Plaintiffs do not allege they are entitled to gross revenues collected by 3PD for deliveries they made, but rather to the gross amount of their *earnings* before any deductions. The SJC explicitly held in *Somers* that once an employee has proved he was misclassified as an independent contractor, "his contract rate is his wage rate" for purposes of the Wage Act. *See Somers*, 911 N.E.2d at 744, 748-50. This is true even if the employer would have paid the employee a lower hourly rate had he been properly classified as an employee, because "if an employer misclassifies an employee as an independent contractor, the

-22-

employer must suffer the consequences." *Id.* at 749.  This makes good policy sense, because if

> employers who violated [§ 148B were] permitted a "safe harbor" that allowed them to demonstrate that they would have paid the employee less had they known he or she was not an independent contractor, there would be no financial incentive to ensure employer compliance and employees would be left with no meaningful protection from misclassification.

*Id.*  Accordingly, even if it results in a "windfall" to Plaintiffs, it is no defense that 3PD would have paid Plaintiffs less had it known they would later be deemed employees subject to the protections of the Wage Act.  *Id.* at 750.

3PD's first argument is more compelling.  While Plaintiffs have established that all the categories of deductions charged against their earnings are recoverable as a matter of law under the Wage Act, factual issues nevertheless preclude the granting of summary judgment on their damages claims.  Specifically, while it may be the case that 3PD's total liability to a class consisting of all its Massachusetts-based drivers can be readily determined, 3PD has identified the existence of genuine disputes regarding the allocation of both earnings and deductions between the named Plaintiffs and secondary drivers that Plaintiffs recruited to operate additional trucks under Plaintiffs' DSAs.

Put another way, despite the mountain of documentary evidence produced in this case and provided to the court,

Plaintiffs have failed to demonstrate what portion of the deductions made against any of their accounts is actually attributable to work they, and not one of their secondary drivers, performed. This is an unfortunate consequence of the reality that an independent contractor agreement, like the DSAs between Plaintiffs and 3PD, "fits only awkwardly into the mold of an employment contract." *Awuah*, 952 N.E.2d at 897 n.20. However, a court is not free to ignore this reality. Consequently, I must decline to grant summary judgment as to specific damages on this ground, despite having outlined generally the type of damages recoverable by Plaintiffs.

### III. CLASS CERTIFICATION

#### A. *Standard of Review*

Plaintiffs have filed a renewed motion for class certification as to Counts II and III. 3PD opposes the motion and counters with a motion to decertify the class as to Count I.

In order to meet the requirements for class certification, Plaintiffs must demonstrate that the proposed class meets the four elements of Fed. R. Civ. P. 23(a) — numerosity, commonality, typicality, and adequacy — and at least one of the requirements of Rule 23(b). *Comcast* v. *Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2548 (2011). Here, Plaintiffs proceed under Rule 23(b)(3), which requires them

to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

District courts have broad discretion in deciding whether to certify a class, *see Funeral Consumers Alliance, Inc.* v. *Service Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012), and may certify a class as to one or more claims without certifying as to all claims alleged in the complaint, *see* Fed. R. Civ. P. 23(c)(4). Because I have already considered the appropriateness of class certification as to all counts in my earlier ruling in this case, I will focus on factual developments since that time insofar as they bear on Plaintiffs' renewed motion for class certification as to Counts II and III, as well as 3PD's motion to decertify the class as to Count I.

**B. *Discussion***

The class for which the Plaintiffs originally sought certification, and which I ultimately certified as to the misclassification claim under Count I, consists of "all individuals who performed delivery services as drivers for 3PD at any time from June 1, 2008 to the present (including drivers who made deliveries for Home Delivery Group, which 3PD acquired in

November 2011)." *Martins*, 2013 WL 1320454 at *5. As I observed
at the time of my initial certification of the class as to Count
I, part of the problem with certifying such a class as to Counts
II and III, which pertain to the Plaintiffs' measure of damages,
is that the class consists of at least three different types of
individuals. Some class members, such as Mr. Martins, contracted
directly with 3PD in their individual capacities, and 3PD made
deductions from its payments to them. *Id.* at *8. Other class
members, such as Mr. Rocha, contracted with 3PD through corporate
entities which they owned and through which they employed
secondary drivers, and 3PD made any deductions from its payments
to those entities. *Id.* Still others – the so-called "secondary"
drivers – performed services for 3PD through corporate entities
owned by other drivers, or in some instances owned by third
parties who did not physically perform any deliveries. *Id.*

While an individual claiming employee status under § 148B
can bring an action under that section even if the employer's
formal contractual relationship is with an incorporated entity,
*see, e.g.*, *Martins*, 2013 WL 1320454 at *17; *Amero* v. *Townsend Oil
Co.*, Civ. A. 07-01080 (Mass. Super. Ct. Apr. 15, 2009); *cf.*
*Depianti,* 990 N.E.2d at 1064-67, when more than one individual
performs work attributed on paper to a single corporate entity,
the issue of individual damages becomes complicated; indeed so

-26-

complicated that it precludes at this point the entry of summary
judgment on specific damages for the named Plaintiffs in this
action.  For primarily this reason, it appeared in the earlier
stages in this litigation that "complex individual inquiries"
would preclude class resolution of damages.  *Id.* at *8-9.  Upon
further review, I am now satisfied that the need for such
"complex individual inquiries" will be eliminated if the
secondary drivers are excluded from the class.  Accordingly, I am
now prepared to certify a class for Counts II and III, limited to
drivers who signed DSAs either in their individual capacities or
through personal corporate entities, for the purposes of
determining on a class-wide basis 3PD's liability for the various
categories of damages sought.[5,6]

---

[5] Perhaps coming to terms with the challenges posed by a class
consisting of all Massachusetts-based 3PD drivers including
secondary drivers, Plaintiffs have recently taken the position
that the class that I previously certified for Count I, and for
which Plaintiffs seek certification for Counts II and III, "does
not include secondary drivers who worked for 3PD through
[contractors] and, thus, were not subject to wage deductions by
3PD."  Although this refinement is not clearly implicit in the
original definition of the class, which encompassed "*all*
individuals who performed delivery services as drivers for 3PD,"
(emphasis added), I have nonetheless taken this opportunity to
consider whether re-defining the Count I class to exclude the
"secondary" drivers would render certification appropriate as to
Counts II and III.

[6] As I will explain, because the secondary drivers will be
excluded from the newly defined class that I am certifying with
respect to Counts II and III, I will also partially decertify the
already certified class as to Count I to exclude the secondary
drivers, in order that they may pursue any claims they have

At an earlier hearing, Plaintiffs' counsel argued that pending further discovery, any individualized inquiry as to damages would become a clerical exercise once I had ruled on 3PD's liability for various categories of allegedly improper deductions, as I have done here in Part II.B.1, *supra*. Plaintiffs' contention, which they have since advanced in the form of the their renewed motion for class certification and motion for summary judgment as to damages, is that 3PD's records clearly indicate the nature and amount of every deduction made in connection with delivery services performed by each class member. Plaintiffs assert that "[s]ince it is now settled that Plaintiffs were misclassified as independent contractors on a class-wide basis, it is a common legal question as to whether deductions 3PD made from its drivers' paycheck violated the Wage Act [Count II] and unjustly enriched 3PD [Count III]."

While I agree that the issue of liability for the various categories of damages does indeed present a common legal question that is suitable for resolution on a class-wide basis, as I have already indicated in my discussion of Plaintiffs' motion for summary judgment, I am no closer to being able to assign an actual dollar value to any individual Plaintiff's claims than I was when I denied Plaintiffs' initial motion for class

───────────────────────

separately from this case.

certification as to Counts II and III.  However, upon

consideration of the evidence submitted in support of Plaintiffs'

motion for summary judgment as to damages and renewed motion for

class certification, I am now satisfied that, with a refinement

of the class definition to exclude secondary drivers, "questions

of law and fact common to class members predominate over any

questions affecting only individual members, and that a class

action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b).

    As indicated in Part II.B.1, *supra*, Plaintiffs seek as

damages the refund of discrete categories of deductions which 3PD

made from Plaintiffs' paychecks.  I have determined in addressing

the individual Plaintiffs' motion for summary judgment that these

deductions were categorically improper because they were premised

on an impermissible "special contract" that 3PD entered into with

all of its primary drivers, and not as a result of a "valid set-

off," as the SJC has interepreted that term.  Further, as I

previously observed, the DSAs (contracts) between 3PD and the

class members which purported to authorize these deductions were

non-negotiable and are materially identical.  *Martins*, 2013 WL

1320454 at *2.  3PD's liability for the various categories of

damages thus does not depend on any individual factual

determinations and is clearly suitable for resolution on a class-wide basis. *See Smilow* v. *Southwestern Bell Mobile Sys.*, *Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) (holding common issues of law and fact predominate where "case turns on interpretation of [a] form contract, executed by all class members and defendant").

To be sure, class members' individual damages will vary. But "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) and cases cited. Moreover, as the First Circuit has recognized, "[c]ommon issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria." *Smilow*, 323 F.3d at 40. "Indeed, even if individualized determinations [are] necessary to calculate damages, Rule 23(c)(4)(A) . . . still allow[s] the court to maintain the class action with respect to other issues." *Id.* To the extent that the calculation of individual damages presents manageability issues in a case that is otherwise appropriate for class treatment, "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action." *In re Visa*, 280 F.3d at 141. These tools include, *inter alia*, appointing a

magistrate judge or special master to preside over individual
damages proceedings; decertifying the class after the liability
trial and providing notice to class members concerning how they
may proceed to prove damages; creating subclasses; or, altering
and amending the class. *Id.*

3PD argues that Plaintiffs have not demonstrated "that
damages are capable of measurement on a class-wide basis," as
they contend is required under the Supreme Court's decision in
*Comcast,* 133 S. Ct. at 1433. However, the majority in *Comcast*
was concerned not that individual class members' damages required
individual calculations, but instead that the complex regression
model which the plaintiffs sought to use to measure damages in
that case (an antitrust action) was, in their view, incapable of
identifying which of four theories of antitrust impact had
resulted in supercompetitive prices in specific geographic areas.
*See id*. at 1433-34.

Regardless of the broader implications of the *Comcast*
decision, it is inapposite where individual amounts of damages
are capable of documentary proof and require only simple
arithmetic.[7] Indeed, it would be a rare class action where some

---

[7] Following *Comcast,* courts have continued to find class
treatment appropriate even where individual damages issues exist.
*See, e.g., Leyva* v. *Medline Indus., Inc.*, 716 F.3d 510, 515 (9th
Cir. 2013); *Healy* v. *Int'l Bhd. of Elec. Workers, Local Union No.
134*, ___F.R.D.___, 2013 WL 4494685 at *11 (N.D. Ill. Aug. 22,

measure of individual damage calculation is not required. *See Smilow*, 323 F.3d at 40 (quoting *Blackie* v. *Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

I am satisfied that the amount of damages due each individual member of the newly-refined class can be calculated with reasonable certainty. 3PD protests that individual issues of damages predominate because not all deductions made against a particular driver's earnings are necessarily attributable to routes driven or services performed by that driver, because many DSA signatories recruited secondary drivers to drive their trucks. I am not persuaded. As I have made clear, class members are only permitted to recover deductions attributable to services they personally performed. Based on my review of a sampling of 3PD's records which have been produced to the court, it appears that most, if not all, deductions made can be linked to the specific drivers who incurred them. If a particular deduction is attributable to a secondary driver (or a truck driven by a

---

2013); *Rosario* v. *Valentine Ave. Discount Store, Co.*, 2013 WL 2395288 at *9 (S.D.N.Y. May 31, 2013).

secondary driver), it is not recoverable as damages by a member of this class.[8]

## C. Decisional Mechanism

The appointment of a special master is often a preferred method for placing a dollar figure on individual damages where liability has already been determined on a class-wide basis. *See, e.g., Leyva* v. *Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013); *Healy* v. *Int'l Bhd. of Elec. Workers, Local Union No. 134*, ___F.R.D.___, 2013 WL 4494685 at *11 (N.D. Ill. Aug. 22, 2013); *Rosario* v. *Valentine Ave. Discount Store, Co.*, 2013 WL 2395288 at *9 (S.D.N.Y. May 31, 2013).  I believe that in this case, the best way to approach the calculation of individual class members' damages is to appoint a special master to review 3PD's records and identify, for each individual class member, the deductions that are attributable to work he personally performed.

_____

[8]  It is therefore irrelevant whether, when charged with a deduction attributable to a secondary driver, a DSA signatory "passed on" the amount of the deduction to that secondary driver. The class members, who are all DSA signatories, cannot recover such deductions in this action.  For example, an Installation Damage Notice issued by 3PD to Plaintiff Alexandro Rocha indicates that the driver responsible for that particular instance of damage was secondary driver Leonardo Oliveira.  Doc. # 138, Ex. B.  Regardless of whether Rocha "passed on" that damage deduction to Oliveira by deducting the amount from Oliveira's pay, Rocha cannot recover the deduction as damages in this action.  If a secondary driver believes a DSA signatory made improper deductions from his pay, he may have a cause of action against that DSA signatory.

A district court is authorized to appoint a master if, among
other things, the "appointment is warranted by . . . the need to
perform an accounting or resolve a difficult computation of
damages." Fed. R. Civ. P. 53(a). Although I suspect the actual
arithmetic involved in this case is not particularly difficult,
reviewing 3PD's records for all class members and isolating
recoverable damage items, while still much more efficient than
holding individual damages trials, will most efficiently be
undertaken by a special master.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary
judgment (#118) is GRANTED as to liability but DENIED as to
specific damages.  Defendant's motion for summary judgment (#90)
is DENIED.  Plaintiffs' motion to strike (#96) is DENIED.
Plaintiffs' motion to certify a class as to Counts II and III
(#93) is GRANTED.  Defendant's motion to decertify the class as
to Count I (#102), is GRANTED in part, as to the secondary
drivers, contingent upon Plaintiffs giving notice of
decertification to all affected secondary drivers.

I hereby CERTIFY a class for all counts, consisting of all
individuals who signed Delivery Service Agreements with 3PD
(either individually or through a personal business entity) and
themselves performed delivery services as drivers for 3PD at any

time from June 1, 2008 to the present.  The class shall include
any such drivers who made deliveries for Home Delivery Group,
which 3PD acquired in November 2011.

The parties shall make a joint submission by April 11, 2014,
containing the name of a proposed special master, as well as the
text of a proposed order of appointment conforming to the
requirements of Fed. R. Civ. P. 53(b).  If the parties are unable
to agree upon a joint submission, they shall file separate
submissions by April 11, 2014, and may file responsive
submissions regarding their respective proposals on or before
April 25, 2014.

In addition, the parties shall, by April 11, 2014, submit a
proposed form of notice to secondary drivers informing them that
they will not be considered class members in this litigation and
must pursue otherwise any claims they may have arising out of the
facts alleged in this litigation.  Formal decertification of such
secondary drivers as class members in this litigation shall not
occur, however, until provisions for notification of those
persons have been formalized. If the parties are unable to agree
upon a proposed form of notice, they shall file separate
submissions by April 11, 2014, and may file responsive
submissions regarding their respective proposals on or before
April 25, 2014.

This matter shall be set down for a further status and scheduling conference on May 7, 2014 at 10 A.M.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT